## MANN v. MT. UNION TANNING & EXTRACT CO. et al.

(District Court, M. D. Pennsylvania. September 17, 1920.)

No. 994.

1. **Sales ☞1(1)—Contract held one of sale.**

   A contract, consisting of plaintiff's acceptance of an offer to purchase logwood, *held*, with respect to plaintiff and the immediate purchaser, one of sale.

2. **Sales ☞3—Agreement to pay price on buyer's default held one of guaranty, and not sale.**

   An agreement whereby defendant jointly obligated itself for the payment of logwood to be delivered to purchaser, who was to deliver same to defendant for manufacture of extract, *held* one of guaranty, and not of sale.

3. **Guaranty ☞59—As between seller and guarantor, shipments paid for by buyer held made pursuant to the contract.**

   In an action against a guarantor for an alleged balance due on a contract of sale, *held*, that shipments delivered to the buyer, and for which payments were made, should be treated as made pursuant to the contract, thus reducing the extent of the guarantor's liability.

4. **Guaranty ☞59—Guarantor of price of goods entitled to credit for amount realized on resale.**

   In an action for an alleged balance due on a contract of sale, where the commodity which was stored was resold by the seller in the exercise of its statutory lien, *held*, that the amount realized should be credited on behalf of the guarantor.

5. **Guaranty ☞53(1)—Guarantor of price of goods released, where seller delivered goods without notice and took lien contrary to agreement.**

   Where the seller of logwood under a contract providing for payment at dock, delivered, without notice to the guarantor, to the buyer the bill of lading for a shipment consigned to the guarantor, and a third person advanced money on the bill of lading, the seller accepting such person's notes for the balance, the guarantor was discharged by reason of the modification of the contract, and placing of the lien.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Assumpsit by Henry Mann, trading as H. Mann & Co., against the Mt. Union Tanning & Extract Company and another. Judgment for plaintiff.

Michael E. Stroup, of Harrisburg, Pa., Mulford Morris and A. L. Williams, both of Wilkes-Barre, Pa., and John A. Thompson, of New York City, for plaintiff.

James S. Woods and H. H. Waite, both of Huntington, Pa., and C. H. Bergner and J. E. B. Cunningham, both of Harrisburg, Pa., for defendants.

WITMER, District Judge. This case is tried without jury by agreement of parties, as provided by Act April 22, 1874 (P. L. 109).

The plaintiff, Henry Mann, trading as H. Mann & Co., has brought this suit against the defendant, the Mt. Union Tanning & Extract Company, and H. Theodore Sorg, as trustee of Bothamley Chemical Color & Extract Company, Incorporated, bankrupt, to recover an alleged ballance due upon the purchase of certain logwood on a contract in writing consisting of certain letters and telegrams. The Bothamley Company, a dealer in logwood and extracts, wrote to Mann, an importer of logwood, under date of April 19, 1916, offering to place with him an order for 2,800 tons of logwood, to be delivered at a specified time and price. Mann replied the following day:

"We accept your order for 2,800 tons of logwood, to be delivered during May, June, July, and August 27, $75 per ton, net cash ex dock, New York."

The letter goes on saying:

"Regarding the delivery of this wood, we beg to say that we have chartered the following boats, which cargoes we can apply to the above quantity: Schooner Fred A. Davenport, cargo 800 to 900 tons; Perry Setzer, load about 1,600 tons, arriving middle of June; Calhoun E. Ross, about 600 tons, should arrive the beginning of July; and Wiley, load 900 tons, should arrive the beginning of August."

The letter further states:

"Of course we may change the above items, as we no doubt will charter other schooners, which may suit you better for your requirements. As to immediate deliveries, we are sorry to say that the chances are not very bright. We will give you as much as we possibly can of our arrivals by steamer. The first large arrival will be the Davenport, and it is understood that the delivery of the wood will be made to the best of our ability."

The Mt. Union Company was a manufacturer of chemical extracts, with whom the Bothamley Company had arranged for the manufacture of the extract from the wood about being purchased, upon some agreement looking to the financing of the undertaking by the Bothamley Company, who was not financially well rated by Mann & Co. At the instance, therefore, of the Bothamley Company, the Mt. Union Company telegraphed Mann & Co., April 28th:

"We will be jointly responsible with Bothamley Chemical Co. for twenty-eight hundred tons logwood recently bought, shipment here."

—followed by letter written the next day, supplementing the telegram, saying again:

267 F.—29

"We beg to advise that we will jointly obligate ourselves for the payment of the 2,800 tons logwood to be delivered in May, June, July, and August at $75 per ton net cash, ex dock New York, which Bothamley Chemical Company have arranged with you to come up on the schooner, Fred A. Davenport, Perry Setzer, Calhoun E. Ross, and Wiley, which wood is to be shipped here."

[1, 2] The contract between the Bothamley Company and Mann & Co., is no doubt one of purchase, while that of the defendant Mt. Union Company constitutes one of guaranty of payment for such purchase, forming the subject-matter of the contract. It was so held by the Court of Appeals of this Circuit in Olivier & Co. v. Mt. Union Tanning Co., 264 Fed. 601, wherein this subject received consideration. Though plaintiff made a strong attempt to place the writing under different light, with a view of having the same construed as a joint contract of purchase, he has not succeeded in convincing the court that it is in any respect different than that placed before the appellate court in the case mentioned.

[3] The dispute between the parties otherwise has to do mainly with the deliveries and shipments made pursuant to the contract, and payments and credits to be allowed on account of such. The contract of purchase provides that deliveries were to be made in May, June, July, and August, amounting to a minimum of 700 tons per month, at $75 per ton net cash, ex dock New York, and the further agreement with the defendant Mt. Union Company was that shipment should be to the Mt. Union works at Mt. Union, Pa.

Regarding the latter, it is admitted that shipments were made during the month of June of wood from the schooner Davenport, amounting to 815 $^{1515}/_{2240}$ tons, and 100 tons from yards of plaintiff, aggregating $68,675.72, and that another shipment was made during the month of August from the schooner Baxter, amounting to 501 $^{420}/_{2240}$ tons, aggregating $37,622.54. It appears that certain shipments were made during the month of May from steamers Lajoc and Uraina, amounting to 936 tons, aggregating $70,274.50. The Mt. Union Company insists that these shipments must be credited to the 2,800 tons contract, while the plaintiff contends that the same were on account of separate and independent contracts which he had with the Bothamley Company. The correspondence between Mann and Bothamley would possibly indicate as much, but the suit is between Mann and the Mt. Union Company, and it is important what the latter's understanding was regarding this matter.

The Mt. Union Company was in need of the wood it was assured; otherwise, it should not have made itself liable for the purchase made. It was entitled under the contract to receive shipments during the month of May, aggregating not less than 700 tons, and accepting the promise of Mann, contained in his letter above quoted, to Bothamley, which no doubt was part of the inducement causing the Mt. Union Company to guarantee payments of the purchase, to the effect that other schooners would be chartered which might better accommodate defendant's convenience, promising to give as much wood from other steamers coming in as possible, so as to help out on the contract; the defendant had a right to suppose that the deliveries made were on

account of the contract in suit, aside from Mr. Green's testimony to the effect that it was with this arrangement and understanding with Mann that his company accepted it and paid for it. Under all of the evidence in the case and bearing in mind the presumption that plaintiff complied with his undertaking to make delivery during the month of May, I find that such deliveries were made and accepted on account of the contract in suit.

[4] As to sales and shipments made to the United Dye Extract Company, at Long Island City, N. Y., the court has found that such sales and shipments, if any, were without the knowledge, consent, approval, or ratification of the Mt. Union Company; hence shipments made, as found, on account of the contract, aggregate $2,354^{340}/_{2240}$ tons, leaving unshipped $445^{1900}/_{2240}$ tons. This balance, it was found, was delivered to Bothamley ex dock New York, but was not paid for, nor was it shipped to Mt. Union, owing to its refusal to receive the same and the embargo placed on further shipments. The wood was stored for the Bothamley Company; but, failing to make payment, the same was sold as provided by the lien law of the state of New York. Allowing for the wood what plaintiff realized on sale by public auction after due advertisement, and believing that such price represented the fair market value, after making allowance for storage and other expenses, defendant should be credited with $11,500 in settlement of its liability on the contract. The defendant is also entitled to the several amounts admitted as paid—November 15, 1916, $1,400, and December 8, 1916, the further sum of $1,600—and the further credit of $70,274.50, paid at various times for shipments delivered from steamers Lajoc and Uraina.

The court having found that the evidence is not sufficient to sustain the defendant's contention that extract in barrels was delivered on account of the contract to plaintiff, by the Bothamley Company or by defendant, the question remaining is whether defendant shall be charged with shipment from the steamer Fred A. Davenport in excess of $33,750 paid by check or draft from Olivier & Co.

[5] It appears that, when the plaintiff made delivery, ex dock New York, on or about June 16, 1916, of the Davenport cargo, including some additional wood from his yard, aggregating $915^{1515}/_{2240}$ tons, to Bothamley Company, and shipping same by Pennsylvania railroad to defendant's plant at Mt. Union, he turned over his bill of lading, obtained from the railroad company, to Bothamley Company, who in turn transferred the same, together with the shipment to Olivier & Co., to secure the money, $33,750, advanced to Bothamley Company. The latter company paid this money to the plaintiff as part payment of the cargo and gave its notes for the balance. Now, if the plaintiff intended to hold the defendant liable on his contract, he should have sent the bill of lading directly to them at Mt. Union, or in any event informed them of Bothamley's transaction with him and Olivier & Co.

The contract of guaranty provided that the cash should be paid at dock, and, if the purchaser did not pay upon the arrival of the wood at dock, notice should have been promptly given to the Mt. Union Company to that effect. Had the company received such notice, it could

have taken prompt steps to compel the purchaser to pay for the logwood, or, paying for it itself, it could have protected itself against the purchaser and others without prejudice of its own rights; but the plaintiff, by accepting the notes of the Bothamley Company, payable at a future date, tied the hands of the guarantor, so that it could not proceed against the purchaser had it desired to do so. This in itself was in violation of the terms of the contract of guaranty, to the prejudice of the guarantor. If so, the plaintiff's conduct in the placing of a lien upon the shipment prior to delivery at Mt. Union was of greater importance and truly should absolve defendant. A long line of cases might be cited to the effect that variation of or departure from the terms of a contract, without the consent of a surety or guarantor, and to his injury, discharges him. Mercer v. Coovert, 6 Watts & S. (Pa.) 70; Hibbs v. Rue, 4 Pa. 348; N. Am. Land Co., etc., 60 Pa. 247; Green v. Boyd, 13 Pa. Super. Ct. 651. And in some cases, where injury is not shown, the change in terms even is prima facia evidence of such injury.

It follows that the account will be stated thus; 2,800 tons logwood, at $75, $210,000, from which will be deducted the items $11,500, $3,-000, $70,274.50, and $67,500, and a dividend, $1,575.37; admittedly received on account, paid by the trustee in bankruptcy of Bothamley & Co., leaving a balance of $56,150.13, for which the court finds in favor of the plaintiff and against the defendant with interest from August 30, 1916.